Bat, J.,
(dissenting,) gave the following opinion :
In this case I differ from my brethren, whose opinions have been delivered, but with that respectful deference which is due to such high authority. It appears to ine, that there is but one material point in the case, and that is, has the executivé of this State a power to interfere with vested rights or not ? By the constitution, from whence the governor of the State derives his authority, 6th sec. 2d article, a power is given to the governor to pardon crimes and offences, and to remit fines and forfeitures, unless otherwise directed by law. This article of the constitution, appears to me to be bottomed on the old principles of the common law, which have long settled that the prerogative of the crown should never extend to vested rights, either in corporations or individuals. Tested rights by the common law, were rights which were relinquished by the crown," and granted either to corporations or individuals; and when these grants were once made, the crown had no more rights over them than they had over lands or any other property, vested in individual's. And when the framers *of our constitution came finally to determine upon this article, they wisely made the reservation,which the wisdom of the common law, from time immemorial, had wisely chalked out, before them. Conformable to these principles, when the *19 Legislature gave the power of granting tavern licences, and retailing of spirituous liquors, &e., to the board of commissioners in 1801, they gave one moiety to the informing prosecutor, and the. other moiety to the commissioners of the high roads of the district, where the offence was committed. This act then vested the right to this moiety, in my opinion, clearly and expressly, in the commissioners, as a body politic, for the uses in the act, and divested in the State of all right and title to .it, which brought it expressly under the exception in the article in the constitution, of remitting fines, unless otherwise directed by law. There was a direction and appropriation by law, which took it away from the State, and consequently from the power of the governor to remit it.
Starh, Solicitor, for the motion. Glifton, contra.
It is admitted, and has been determined'in several cases, that-the governor has no power over the moiety of any fine, which goes to an informer ; and if I understand correctly, all my brethren concur in these former determinations. At all events, they are the laws of the land, until future decisions overrule them, or some act of the Legislature controls them. So, in my opinion, the Act of 1801 gave one moiety to the commissioners in the same manner that it gave one moiety to the prosecutor or informer. ■ • ■
. But, it has been said, that until the money is received by the commissioners the governor has a control over it, and may remit.it. This, in my opinion, is a distinction, without any solid reason to support it; for where there is a right, the law gives the remedy, to recover this right. Shall the governor then obstruct this right, and defeat this remedy ? The law would be a strange system, indeed, to permit it; and justice itself would blush at such a construction.[1]
I am, therefore, clearly and decidedly of opinion, that the rule upon the sheriff, to produce the money, *ought to have been made absolate, and that the decision of the judge ought to be set aside.

 See State v. Simpson, 1 Bail. 378.